UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIOPOINT, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>LEAH ATTIS, ANDREW DICKHAUT, and CATAPULT STAFFING, LLC d/b/a CATAPULT SOLUTIONS GROUP,<br><br>    Defendants. | Civil Action No. 1:20-cv-10118-RGS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS ANDREW DICKHAUT'S
AND CATAPULT STAFFING, LLC'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5) and (6), Andrew Dickhaut ("Dickhaut") and his employer Catapult Staffing, LLC d/b/a Catapult Solutions Group ("Catapult") (together, the "Defendants") move to dismiss the Amended Complaint filed by BioPoint, Inc. ("BioPoint").

BioPoint filed suit in this Court "pursuant to 28 U.S.C. § 1331 because this matter involves claims arising under federal law." Amended Complaint, ¶ 5. The *only* federal claim at issue is for a violation of the Defend Trade Secret Act, 18 U.S.C. §§ 1831-39 ("DTSA") (Count III). This claim, however, fails as a matter of law—***and this Court, therefore, lacks subject matter jurisdiction***—because BioPoint has not adequately alleged *any* nexus between the alleged trade secrets misappropriated by Defendants and interstate commerce. *See* 18 U.S.C. § 1836(b)(1); *Viken Detection Corp. v. Videray Techs. Inc.*, 384 F. Supp. 3d 168, 177 (D. Mass. 2019) ("A plaintiff may also bring a claim under the DTSA for misappropriation of a trade secret if it is related to a product or service used in or intended to be used in interstate or foreign commerce."). BioPoint's Amended Complaint contains *one* conclusory allegation that its

"confidential information" "is related to interstate commerce." *See* Amended Complaint, ¶ 84. This bare allegation, however, is insufficient *as a matter of law*. Indeed, BioPoint does not even attempt to allege that the so-called "trade secrets" purportedly misappropriated by its former employee, Leah Attis ("Attis") and shared with Defendants were in any way "related to" or "intended for use in" interstate commerce as required by 18 U.S.C. § 1836(b)(1). Nor can it— particularly given BioPoint's own admission that ***every person*** resides, ***every entity*** exists and ***every action*** occurred in Massachusetts. *See id.*, ¶¶ 1-3, 7-8, 103. Because the DTSA claim serves as the basis for supplemental jurisdiction over every other claim (*see id.*, ¶ 6), BioPoint's Amended Complaint must be dismissed in its entirety. *See* Fed. R. Civ. P. 12(b)(1), (6).

BioPoint's remaining claims against Defendants fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

*First*, the trade secret claims (Counts II and III) fail as a matter of law. Specifically, Count II alleges a violation of the Massachusetts Uniform Trade Secrets Act, M.G.L. ch. 93, §§ 42-42G ("MUTSA"). *See* Amended Complaint, ¶¶ 73-81. By its plain language, the MUTSA ***does not apply*** to alleged misappropriation occurring prior to its effective date of October 1, 2018, even where the alleged misappropriation continues past that date. *See Maine Pointe, LLC v. Collins*, 2018 WL 5303038, at * 4 (D. Mass. Oct. 25, 2018). Here, BioPoint contends that the alleged misappropriation began as early as 2017. *See* Amended Complaint, ¶¶ 42, 46. As such, MUTSA does not apply. *Maine Pointe*, 2018 WL 5303038, at * 4.

*Second*, BioPoint has not identified, with requisite specificity, the existence of any alleged "trade secret" as defined under the DTSA, MUTSA or Massachusetts common law.[1]

---

[1] As such, even if the Court deems the Amended Complaint to allege a claim for misappropriation of trade secrets under the older Massachusetts statute or Massachusetts common law (as opposed to MUTSA), Count II still fails as a matter of law.

*Ferring Pharmaceuticals, Inc. v. Braintree Laboratories, Inc.*, 38 F. Supp. 3d 169, 175 (D. Mass. 2014); *Viken*, 384 F. Supp. 3d at 177 ("The standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law."). BioPoint vaguely contends that Attis shared information with Defendants—this information, however, does not meet the definition of a "trade secret" and, therefore, Counts II and III fail as a matter of law. *See, e.g.*, *Oxford Global Resources, Inc. v. Guerriero*, 2003 WL 23112398, at * 8-9 (D. Mass. 2003) (information about third parties is not confidential if competitors could obtain that information directly).

Additionally, BioPoint's tortious interference claim (Count V) fails because it does not allege that Defendants: (i) knew about any prospective business relationship; or (ii) interfered with BioPoint's prospective relationship(s) through any improper motive or means, or for any reason other than "to acquire the same object, not in order to inflict injury . . ., but for [their] own commercial advantage." *Doliner v. Brown*, 21 Mass. App. Ct. 692, 695 (1986). Finally, BioPoint's Chapter 93A claim (Count VI) fails because it relies completely on the other, improperly pled counts.

BioPoint's Amended Complaint must also be dismissed under Rule 12(b)(2)(5) due to insufficient service of process. BioPoint filed its ***unverified*** Amended Complaint with the Court and served it on Defendants by first class mail on January 24, 2020. (ECF 11). However, in its rush to proceed as quickly as possible—and without any legitimate basis—BioPoint failed to properly serve Defendants with its Amended Complaint, which immediately necessitates dismissal. Indeed, BioPoint relies on service under Federal Rule of Civil Procedure 5, which allows for service by mail of an amended complaint only where (1) the original complaint was properly served, ***and (2) the defendants have appeared***. *See Cryer v. UMass Med. Correctional Health*, 2011 WL 841248, at * 1 (D. Mass. Mar. 7, 2011) (Saris, J.). Because Defendants had

not yet appeared in this case when BioPoint purportedly served its Amended Complaint by mail, service was improper and this case should be immediately dismissed. *See* Fed. R. Civ. P. 12(b)(2), (5); *Aly v. Mohegan Council-Boy Scouts of Am.*, 2009 WL 3299951, at * 1 (D. Mass. Apr. 20, 2009) (without proper service, the court lacks personal jurisdiction).

## **FACTUAL BACKGROUND**[2]

BioPoint, a Massachusetts corporation, provides consulting services to clients in the life sciences industry. *See* Amended Complaint, ¶¶ 1, 9. It partners with clients to place expert consultants in areas relevant to the life sciences industry. *Id*. at ¶ 10.

Attis, a Massachusetts resident, worked at BioPoint as its Business Development Manager from May 2015 through December 4, 2019, when she was terminated by BioPoint. *Id.* at ¶¶ 2, 18, 31. During this time, she was in a personal relationship with Dickhaut. *Id.* at ¶ 31. During her employment, Attis signed a Non-Solicitation, Non-Competition, and Confidentiality Agreement (the "Agreement"). *Id*. at ¶ 20. The Agreement provided that Attis would not disclose any "Confidential Information,"[3] either during or after her employment. *Id*. at ¶¶ 23-26. The Agreement also provided that Attis would not solicit any business related to BioPoint's business, divert any business or customer away from BioPoint, or place consultants at other companies. *Id*. at ¶ 27.

Catapult, a company which also provides consulting services, hired Dickhaut as a Managing Director in August 2017. *Id*. at ¶¶ 32, 34. Dickhaut is a Massachusetts resident and works at Catapult's Massachusetts office. *Id*. at ¶¶ 3, 34, Certificate of Service.

---

[2] The facts set forth below are taken from the Plaintiff's Amended Complaint. While they are taken as true for purposes of this Motion, Defendants do not admit the truth of any fact alleged in the Amended Complaint for any purpose other than the Court's ruling on this Motion. Should the Court deny this Motion, Defendants reserve the right to admit or deny each allegation, as the case may be, in its answer to the Amended Complaint.

[3] "Confidential Information" is defined in the Agreement at § 1.1. (*Id.* at Exhibit A).

According to BioPoint, beginning in September 2017 and continuing through 2019, Attis sent Dickhaut information relating to BioPoint's business, potential leads for placing consultants and consultant information. *Id*. at ¶¶ 41-43, 55. In addition, BioPoint alleges that beginning in December 2017, Attis helped Dickhaut and Catapult to secure contracts that BioPoint was soliciting. *Id*. at ¶ 46. BioPoint further alleges that Attis helped Dickhaut secure Vedanta Biosciences, Inc. ("Vedanta"), a potential BioPoint client, for Catapult. *Id.* at ¶¶ 47-50. Notably, Vedanta is located in Cambridge, Massachusetts. The Amended Complaint claims that Catapult secured a contract with Vedanta in early 2019. *Id*. at ¶ 51.

BioPoint contends that Attis admitted that she had been sharing its information with Dickhaut. *Id*. at ¶ 61. As a result, she was terminated on December 4, 2019. *Id*. at ¶¶ 61, 63. The Amended Complaint also alleges that Attis has continued to solicit BioPoint's potential customers, and otherwise competed with it, since her termination. *Id*. at ¶ 66.

## ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction

#### A. Subject Matter Jurisdiction is Premised on BioPoint's DTSA Claim

BioPoint contends that this "Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this matter involves claims arising under federal law." *Id.* at ¶ 5.[4] BioPoint asserts only one federal claim—misappropriation of trade secrets under the DTSA (Count III). As the plaintiff, BioPoint bears the burden of establishing subject matter jurisdiction. *See Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 688 (D. Mass. 2018); *Arabaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (subject matter jurisdiction can never be "forfeited or waived"). Without subject matter jurisdiction, the Court must dismiss the Amended

---

[4] As BioPoint's Amended Complaint demonstrates, there is no diversity between the parties. *See* Amended Complaint, ¶¶ 1-3. As such, the only ground for subject matter jurisdiction is a federal question.

Complaint in its entirety.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

### B. BioPoint's DTSA Claim Fails as a Matter of Law

At the pleadings stage of litigation, "[t]he issue of whether there is subject matter jurisdiction raises the question whether the complaint, on its face, asserts a non-frivolous claim arising under federal law."  *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 212 n.9 (1974). Here, BioPoint's federal claim (DTSA) fails as a matter of law.  *See* Fed. R. Civ. P. 12(b)(6).[5] Under the DTSA, federal courts have subject matter jurisdiction only "if the trade secret is related to a product or service used in, or intended for use in, interstate of foreign commerce." 18 U.S.C. § 1836(b)(1); *Viken*, 384 F. Supp. 3d at 177; *GEICO v. Nealey*, 262 F. Supp. 3d 153, 172 (E.D. Pa. 2017) (same).  Failure to allege any nexus between interstate or foreign commerce and the alleged trade secrets at issue, standing alone, requires dismissal.  *See, e.g.*, *GEICO*, 262 F. Supp. 3d at 173 (dismissing DTSA claim due to lack of nexus to interstate commerce, noting that "[t]his deficiency, in itself, warrants dismissal of plaintiffs' DTSA claim").

Here, the Amended Complaint alleges that Attis (a Massachusetts resident), misappropriated so-called "trade secrets" while in Massachusetts—consultants who resided in Massachusetts, for job placements in Massachusetts—to the detriment of BioPoint (a Massachusetts company) to benefit Dickhaut (a Massachusetts resident) and his company,

---

[5] To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only if, "after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Bourne v. Gardner*, 270 F. Supp. 3d 385, 388 (D. Mass. 2017). Conclusory legal allegations, however, "need not be credited."  *Cook & Co. v. Volunteer Firemen's Ins. Servs.*, 657 Fed. App. 1, 2 (1st Cir. 2016).  Instead, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff asks the Court to draw.  *See Ocasio Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein, and facts susceptible to judicial notice.  *See Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Catapult (who was doing business in Massachusetts).  *See* Amended Complaint, ¶¶ 2, 3, 7, 103.  The Amended Complaint also alleges that Attis assisted Dickhaut and Catapult with securing a contract with Vedanta—a Massachusetts company.  *See id.* at ¶¶ 47-51.  BioPoint also alleges that Attis shared her commission statements—reflecting money she was paid in Massachusetts for work she did in Massachusetts—with Dickhaut.  *See id.* at ¶ 42(c).  Indeed, BioPoint expressly alleges that Defendants' alleged acts "occurred primarily and substantially in Massachusetts, including because Dickhaut resides in Massachusetts, and because Dickhaut and Catapult tortiously interfered with BioPoint's Massachusetts business with its clients and consultants."  *Id.* at ¶ 103.

Notably, the Amended Complaint ***does not allege any nexus between the alleged "trade secrets" and interstate commerce***.  *See GEICO*, 262 F. Supp. 3d at 173.  Indeed, the *only* reference to interstate commerce throughout the Amended Complaint is the following conclusory sentence: "BioPoint's confidential information, as described above, is related to interstate commerce, as BioPoint and its clients conduct business across state lines, and thus constitute trade secrets within the meaning of the [DTSA]."  Amended Complaint, ¶ 84.  This statement does nothing to tie the so-called "trade secrets" allegedly misappropriated to interstate commerce as required under the DTSA.  Instead, it amounts to nothing more than the type of conclusory, "formulaic recitation of the elements" that courts have routinely found to be inadequate.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  And, courts consistently require a far more specific nexus than the allegations contained in the Amended Complaint. *See, e.g.*, *GEICO*, 2017 WL 2572519 at * 13 (where Amended Complaint "does not allege any nexus between interstate or foreign commerce and the alleged trade secrets," claim must be dismissed); *Hydrogen Master*

*Rights, Ltd. v. Weston*, 2017 WL 78582, at * 10 (D. Del. Jan. 9, 2017) (same).[6]  It is simply not enough that BioPoint *may* do interstate business.  Instead, the trade secrets themselves must be "related to a product or service used in, or intended for use in, interstate of foreign commerce." 18 U.S.C. § 1836(b)(1).  Here, the Amended Complaint makes no such allegation.

In short, BioPoint's DTSA claim (Count III) fails as a matter of law and must be dismissed.  In addition, because this claim is the only claim under federal law, and there is no other basis for this Court to exercise subject matter jurisdiction over the remaining claims, this Court must dismiss the Amended Complaint in its entirety.  *See* Amended Complaint, ¶¶ 5-6; Fed. R. Civ. P. 26(1), (6).

## II. The Remaining Claims in the Amended Complaint Must be Dismissed under Rule 12(b)(6)

### A. Counts II and III—the Trade Secret Claims—Fail as a Matter of Law

#### 1. MUTSA Does Not Apply to the Alleged Misappropriation

In Count II, BioPoint is alleging a violation of the MUTSA.  *See* Amended Complaint, ¶ 77 ("BioPoint's confidential information thus constitute trade secrets within the meaning of the Massachusetts Uniform Trade Secrets Act (M.G.L. ch. 93 §§ 42-42G)").  The MUTSA took effect on October 1, 2018 and "does not apply to any violations that occurred before October 1, 2018 or began prior to October 1, 2018 and continued past that date."  *Maine Pointe*, 2018 WL 5303038, at * 4 (citing 2018 Mass. Acts ch. 228, § 70) (MUTSA "shall take effect on October 1, 2018, and shall not apply to misappropriation occurring prior to the effective date.  With respect

---

[6] *Compare Scott Environmental Services, Inc. v. Newfield Exploration Company*, 2019 WL 6220968, at * 3 (E.D. Tex. Oct. 23, 2019) (plaintiff sufficiently pled DTSA claim where it detailed how trade secrets "related to a product or service used in Texas" were used in meetings in Oklahoma); *Complete Logical Services, LLC v. Rulh*, 350 F. Supp. 3d 512, 520 (E.D. La. 2018) (plaintiff adequately pled DTSA claim where complaint alleged that the plaintiff transacted business out of state as well as by phone, internet, and mail, and provided the Court with its customer list showing several out of state customers).

8

to continuing misappropriation that began prior to the effective date, said sections 42 to 42G, inclusive, *also do not apply to the continuing misappropriation that occurs after the effective date*.").

Here, the Amended Complaint alleges that Attis shared confidential information and so-called trade secrets with Dickhaut as early as September 2017 and continuing through July 2018. *See* Amended Complaint, ¶¶ 42, 46, 47. As such, MUTSA does not apply and Count II must be dismissed.

### 2. BioPoint Fails to Allege the Existence of a Trade Secret, Therefore, Counts II and III Fail as a Matter of Law

In order to prevail on a misappropriation of trade secret claim, a plaintiff must show "the existence of a trade secret." *Francounsel Group, LLC v. Dessange Int'l SA*, 980 F. Supp. 2d 1, 6 (D. Mass. 2013); *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 n.2 (1st Cir. 1985) (a trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it").[7] In order to meet its burden under either Massachusetts or Federal law, BioPoint must "identify with *adequate specificity* the trade secret or proprietary information that was allegedly misappropriated by the defendant." *Ferring*, 38 F. Supp. 3d at 175 (plaintiff failed to state a claim for misappropriation because it did not identify "with adequate specificity any trade secrets in materials that have not been submitted with the pleadings"); M.G.L. ch. 93, § 42D(b) (plaintiff "must state with reasonable particularity" the "nature of the trade secrets" under MUTSA). In other words, "[a] plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue." *Sutra, Inc. v. Iceland Exp., ehf*,

---

[7] Massachusetts law and federal law incorporate the concept of secrecy into the definition of trade secret. *See* MUTSA, M.G.L. ch. 93, § 42(4); DTSA, 18 U.S.C. § 1839(3); *Viken*, 384 F. Supp. 3d at 177 ("The standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law.").

9

2008 WL 2705580, at * 4 (D. Mass. 2008) (internal citations omitted) (where plaintiff's "description of its alleged trade secret is overly broad, . . . this lack of specificity is fatal to its claim"); *Cambridge Internet Sols., Inc. v. Avicon Grp.*, 1999 WL 959673, at * 2 (Mass. Super. Sept. 21, 1999) (plaintiff must "adequately identif[y]" the trade secrets at issue).

In addition, "[m]atters of public knowledge or general knowledge in an industry" are not trade secrets. *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 729 (1970); *Viken*, 384 F. Supp. 3d at 177 (plaintiff failed to show existence of a "protectable trade secret"); *Boston Scientific Corp. v. Lee*, 2014 WL 1946687, at * 3 (D. Mass. May 14, 2014) ("The subject matter of a trade secret must be secret.") (internal citations omitted). Whether or not business information qualifies as secret "depends on the conduct of the parties and the nature of the information," but courts generally consider six factors of relevant inquiry:

> (1) The extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840 (1972).

Here, the Complaint alleges that the following are BioPoint's "trade secrets":

BioPoint uses a database called Crelate to track prospective and current consultant placements and information about its clients. The database includes data relating to **BioPoint's communication with consultants and clients, internal notes, consultants' credentials, reference checks, and contracts** . . . BioPoint also provides its employees with other confidential information relating to its sales efforts, such as **account lists, pricing for services, contract terms and arrangements, volume of sales by client and employees, and client-specific know-how collected in the field**. This information, as well as the data in Crelate, constitutes a trade secret.

Amended Complaint, ¶¶ 15-16 (emphasis added).[8]  While BioPoint may, in fact, have certain "trade secrets," the Amended Complaint **does not allege** that Attis shared any of that "secret" information with Defendants.  Instead, BioPoint claims that Attis shared unspecified introductory emails from prospective clients, her monthly commission report, consultant's qualifications, potential leads, *etc.*, with Dickhaut.  *See* Amended Complaint, ¶¶ 42, 46.  However, ***none*** of these items are identified with adequate specificity.  *Ferring*, 38 F. Supp. 3d at 175 (D. Mass. 2014).

Moreover, ***none of this information appears to constitute a trade secret***. *See generally Id.* at 175 ("Information within the public domain is not a trade secret.").  For example, BioPoint alleges that Attis shared her commission report with Dickhaut.  *See* Amended Complaint, ¶ 42(c).  Her commission report, however, was not "market secret or confidential and did not tell [Attis] what to do with them."  *Patriot Energy Group, Inc. v. Kiley*, 32 Mass. L. Rptr. 169, at * 11 (Mass. Super. 2014) (commission reports did not contain "significant trade secrets").  Similarly, information about "consultant qualifications" or open positions (*see* Amended Complaint, ¶¶ 42, 46) is not a trade secret.  *See, e.g., Chiswick, Inc. v. Constas*, 18 Mass. L. Rptr. 104, at * 3 (Mass. Super. 2004) ("Information is not confidential if competitors could obtain the same information from a third party, or the information is obtainable from publicly available sources."); *Oxford Global*, 2003 WL 23112398, at * 8-9 ("[I]nformation about a third party is not confidential if competitors could obtain the same information directly from the third party.").[9]  Thus, aside from a few, conclusory allegations, BioPoint has not sufficiently alleged

---

[8] To the extent BioPoint is relying on Attis' Agreement to establish the existence of the so-called "confidential information," its existence is insufficient.  *See Dynamics Research Corp. v. Analytic Scis. Corp.*, 9 Mass. App. Ct. 254, 277 (1980) ("Such an agreement cannot make secret that which is not secret."); *Lanier Prof. Servs., Inc. v. Ricci*. 192 F.3d 1, 5 (1st Cir. 1999) (same).

[9] *See also Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1016 (N.D. Ill. 2014), *aff'd*, 793 F.3d 748 (7th Cir. 2015) ("The identity of [plaintiff's] clients, the clients' hiring needs, and the qualifications of [plaintiff's] candidates are not secrets.  Information regarding open positions is often available publicly, is provided to [plaintiff's] competitors by [plaintiff's] clients, and is provided by [plaintiff] to potential candidates [plaintiff] would like to

that *any* of the so-called "confidential information" shared by Attis with Dickhaut actually constitute a "secret."

In short, Counts II and III should still be dismissed for BioPoint's failure to plead the existence of actual trade secrets.

### B. BioPoint Does Not Allege that Defendants Tortiously Interfered with BioPoint's Prospective Relationship

BioPoint alleges that Defendants interfered with its potential business relationships. *See* Amended Complaint, ¶¶ 95-99. The mere fact that Defendants—who are competitors of BioPoint—successfully secured business relationships that BioPoint could not, does not constitute tortious interference. *See, e.g.*, *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 Mass. App. Ct. 34, 38 (2004) ("Tortious interference has become the 'tort du jour' in the world of commercial litigation; that increases the importance of distinguishing truly inappropriate behavior for which there should be a remedy from normal competitive behavior permissible in the marketplace."). Indeed, "competitive infighting, though sometimes unattractive," does not constitute tortious interference, without more." *Cook*, 657 Fed. App. at 2 (dismissing claim where plaintiff failed to state any facts that suggested that defendants "engaged in any tortious or otherwise wrongful acts in connection with [former employee's] alleged breach."). Instead, in order to meet its burden to withstand a motion to dismiss, BioPoint was required—yet failed—to allege: (1) that Defendants *knew* of any prospective business relationship; or (2) that Defendants used improper motive or improper means.[10]

---

place. The identity, qualifications, and availability of [plaintiff's] candidates are published on public job boards and known by [plaintiff's] competitors, who are often trying to place the same candidates.")

[10] A claim for interference with prospective business relations requires BioPoint to allege: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and malicious interference with it; (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.*, 112 F.3d 1240, 1250 (1st Cir. 1997). The interference must arise from "improper motives or the use of improper means." *Id.*; *Boyle v.*

*First*, BioPoint does not allege that Catapult or Dickhaut **knew** of any such prospective business relationships. Instead, it alleges in a conclusory fashion that Defendants "likewise interfered with BioPoint's prospective relationships by using BioPoint's misappropriated confidential information to obtain these prospective relationships for Catapult," by interfering with a client relationship with Vedanta and a placement of a consultant at a client in November, 2019." Amended Complaint, ¶¶ 96, 98. This is insufficient to state a claim. *See Boxcar Media, LLC v. Redneckjunk, LLC*, 345 F. Supp. 2d 76, 78 (D. Mass. 2004) (dismissing claim where party failed to allege "whether the [opposing party] knew about any such relationship").

*Second*, BioPoint has not alleged any facts that suggest that Defendants acted through an improper motive, *i.e.*, "out of enmity or with the purpose of hurting [Plaintiff]." *ARY Jewelers, LLC v. IBJTC Business Credit Corp.*, 414 F. Supp. 2d 90, 93-94 (D. Mass. 2006) (plaintiff "adduced no facts suggesting that [defendant] acted through an improper motive"); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 369 (D. Mass. 2017) (improper motive "can be established by showing retaliation or ill will toward the plaintiff") (internal citations omitted). Likewise, BioPoint did not allege that Defendants acted with improper means, *i.e.*, "used threats, misrepresented any facts, defamed anyone, or used any other improper means in relation to either the existing contract or the prospective ones." *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990) (holding that because defendant's "apparent motives were to benefit his customers and himself financially," there was "not enough evidence to warrant a finding that his real motive in these matters was to hurt [plaintiff]").

Here, while BioPoint alleges that *Attis* interfered with BioPoint's prospective relationships with a conclusory statement that she acted "through improper motive or means"

---

*Douglas Dynamics, LLC*, 292 F. Supp. 2d 198, 213 (D. Mass. 2003) (elements of tortious interference include "the defendant's interference with [the relationship] through improper motive or improper means").

13

(Amended Complaint, ¶ 97), *it does not do the same for Dickhaut and Catapult*.[11]  Indeed, BioPoint does not even suggest that Defendants acted with improper motive.  Instead, it **admits** that Defendants were direct competitors for the same business.  *See id.* at ¶¶ 40, 93, 97.  "Advancement of one's economic interest, however, is not an improper motive."  *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 269 (D. Mass. 2008) (granting motion to dismiss).[12]  And, under Massachusetts law, "[a] competitor may 'interfere' with another's contractual expectancy by picking the deal off for himself, if, in advancing his own interest, he refrains from employing wrongful means."  *Doliner*, 21 Mass. App. Ct. at 695.[13]  In other words, a party is permitted to "seek[] to acquire the same object, not in order to inflict injury on [Plaintiff], but for his own commercial advantage."  *Id*.

BioPoint has also not alleged that Defendants acted with improper means.  The Amended Complaint does not allege that Defendants (*i.e.*, Catapult and Dickhaut) threatened BioPoint or its prospective clients or defamed BioPoint to any other person or entity.  Nor does it allege that Defendants made any misrepresentations.  Conclusory allegations regarding Defendants' actions that "merely parrot the elements of the cause of action are insufficient to state a plausible claim under Rule 12(b)(6).  *Ayyadurai*, 270 F. Supp. 3d at 369 (dismissing claim for intentional interference with prospective economic advantage).

---

[11] Instead, BioPoint merely alleges that "Dickhaut and Catapult likewise interfered with BioPoint's prospective relationships by using BioPoint's misappropriated confidential information to obtain these prospective relationships for Catapult."  *Id*. at ¶ 98.

[12] In other words, there is "ample evidence that [Defendants] dominant purpose . . . was to profit commercially and only incidentally to advance their competitive position."  *Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 428-39 (2002).

[13] *See also* Restatement (Second) of Torts § 768 (1979) ("One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor . . . does not interfere improperly with the other's relation if a) the relation concerns a matter involved in the competition between the actor and the other; and b) the actor does not employ wrongful means; and c) his action does not create or continue an unlawful restraint of trade; and d) his purpose is at least in part to advance his interest in competing with the other").

Simply put, BioPoint has not properly pled its claim for tortious interference, and the Court should therefore dismiss Count V of the Amended Complaint.

### C. Because BioPoint's c. 93A Claim Relies on the Sufficiency of its Other Claims, it Should be Dismissed

Count VI of the Amended Complaint alleges violations of M.G.L. ch. 93A, based on the alleged tortious interference and misappropriation claims previously alleged. *See* Amended Complaint, ¶ 102. For the reasons stated above, the Amended Complaint does not adequately plead facts supporting claims of tortious interference[14] or misappropriation of trade secrets. Thus, for the same reasons, BioPoint's 93A claim should be dismissed in its entirety. *See, e.g.*, *Kearney v. Philip Morris, Inc.*, 916 F. Supp. 61, 65 (D. Mass. 1996) (dismissing 93A claim).

### III. BioPoint's Amended Complaint Must be Dismissed for Improper Service and, as a Result, Lack of Personal Jurisdiction under Rules 12(b)(2), (5)

It is BioPoint's burden to demonstrate that service of the Amended Complaint was proper. *See Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992) ("Also we note the fact that, once challenged, plaintiffs have the burden of proving proper service."); *Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 n.2 (1st Cir. 1986) ("The burden of proof to establish proper service of process was upon plaintiffs."). Without proper service of process, a federal district court cannot exercise personal jurisdiction over the defendant. *See Aly v. Mohegan Council-Boy Scouts of Am.*, 2009 WL 3299951, at * 1 (D. Mass. Apr. 20, 2009) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied.").

---

[14] Moreover, M.G.L. ch. 93A, § 11 has not "been extended to apply to a party . . . competing for a business advantage because he is made aware that another has been exerting himself to the same end. That would be an extravagant rule of law." *Hunneman*, 54 Mass. App. Ct. at 429.

Here, BioPoint served the Amended Complaint by U.S. Mail on Catapult and Dickhaut, relying on Rule 5. (ECF 11). Rule 5 provides:

> **(a) Service: When Required.** Except as otherwise provided in these Rules, or unless the court on motion with or without notice or of its own initiative otherwise orders, every order required by its terms to be served, every pleading subsequent to the original complaint, . . . shall be served upon each of the parties. . . .
>
> **(b) Same: How Made.** . . . Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. . . . Service by mail is complete upon mailing.

Mass. R. Civ. P. 5.

BioPoint's reliance on Rule 5 for service of process (service by mail) (ECF 11) in this situation is misplaced. In particular, "service of process of an **amended complaint** can only be accomplished under Rule 5 where: (1) the original complaint was properly served, and (2) ***the defendants have appeared***." *Cryer*, 2011 WL 841248, at * 1 (emphasis added) (quashing service of amended complaint).[15] Here, while Catapult and Dickhaut were served with the original complaint (ECF 9), ***they had not yet appeared in the case at the time the Amended Complaint was served*** on January 24, 2020. (ECF 11). Indeed, they did not appear until February 6, 2020. (ECF 19, 20). As such, it was wholly improper for BioPoint to mail the

---

[15] *See also Employee Painters' Tr. v. Ethan Enterprises, Inc.*, 480 F.3d 993, 995-96 (9th Cir. 2007) ("We therefore take this opportunity to clarify that an **amended complaint** can often be served in the same manner as any other pleading if the original complaint is properly served **and the defendants appeared in the first instance**.") (emphasis added); *Fluor Engineers & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 (5th Cir. 1985) ("[W]e agree with the Norfolk & Western's suggestion that Rule 5(a) service is proper only after a party has appeared in an action."); *Navarro v. Golden State Claims Adjusters*, 2018 WL 4471782, at * 6 (N.D. Tex. Aug. 27, 2018) ("When a party has not yet appeared in an action, a pleading filed after the original complaint must be served according to Federal Rule of Civil Procedure 4."); *Netzsch Premier Techs., LLC v. Puhler Feinmahltechnik GmbH*, 2016 WL 6573886, at * 2 (S.D. Ind. Nov. 7, 2016) (service under Rule 5 is effective only after a party has appeared in the case); *Bricklayers & Allied Craftworkers Local Union No. 3 v. Palomino*, 2010 WL 2219595, at * 3 (N.D. Cal. June 2, 2010) ("Rule 5 of the Federal Rules of Civil Procedure permits service of an amended complaint by mail to a defendant's last known address, without personal service of the summons and complaint, if the original complaint is properly served *and the defendant [] appeared in the first instance*.") (emphasis in original); Fed. Prac. & Proc. Civ. § 1146 (4th ed.) ("The service provisions of Rule 5 apply only to parties who have appeared. Thus it is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with Rule 4.").

Amended Complaint to Catapult and Dickhaut pursuant to Rule 5. *Cryer*, 2011 WL 841248, at *1. Because Dickhaut and Catapult have not been properly served with the Amended Complaint, this case should be dismissed.

## CONCLUSION

For the reasons stated above, Defendants ask that this Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Respectfully Submitted,

ANDREW DICKHAUT AND CATAPULT STAFFING, LLC

By its attorney,

/s/ Elizabeth A. Reidy
Dana A. Zakarian (BBO# 641058)
Elizabeth A. Reidy (BBO# 625106)
John Nucci (BBO# 685087)
NYSTROM BECKMAN & PARIS LLP
One Marina Park Drive, 15th Fl.
Boston, Massachusetts 02210
(617) 778-9100
dzakarian@nbparis.com
ereidy@nbparis.com

Dated: February 14, 2020

## CERTIFICATE OF SERVICE

I, Elizabeth A. Reidy, hereby certify that on this 14th day of February 2020, the foregoing document was filed through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Elizabeth A. Reidy