IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BIOPOINT, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action. No. 1:20-CV-10118-RGS |
| vs. | ) | |
| | ) | |
| LEAH ATTIS, et al. | ) | |
| | ) | |

## DEFENDANT LEAH ATTIS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### I.     INTRODUCTION

Defendant Leah Attis ("Attis") hereby submits this Memorandum of Law in support of her Motion to Dismiss, and requests dismissal of all claims against her in the Amended Complaint filed by Plaintiff BioPoint, Inc. ("BioPoint").

First, all of BioPoint's claims against Attis in this case are related to the Non-Solicitation, Non-Competition and Confidentiality Agreement that BioPoint required Attis to sign when BioPoint hired her in May of 2015.  The Agreement contains a mandatory and exclusive forum selection clause, mandating that any legal action or proceeding "with respect to the Agreement" be brought solely in the courts of the Commonwealth of Massachusetts.  BioPoint's claims against Attis must be dismissed.

Second, with respect to all but one of the claims in the Amended Complaint, BioPoint has failed to allege facts demonstrating a plausible claim for relief against Attis, and such claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Finally, BioPoint's Complaint is also subject to dismissal for insufficient service.

{K0827772.1}

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

BioPoint alleges that it employed Attis as a Business Development Manager, from in or around May of 2015 until BioPoint terminated her, on or about December 4, 2019. *See* Amended Complaint filed in this action, at Dkt. No. 11 (the "Complaint"), at ¶¶ 18-19, 63.  When BioPoint hired Attis, it required her to sign BioPoint's Non-Solicitation, Non-Competition and Confidentiality Agreement (the "Agreement"), which Attis signed on or about May 29, 2015. *See* Complaint, at <u>Exhibit A</u>.  The Agreement purported to define BioPoint's "confidential and proprietary information" to include broad categories of information, including "information concerning: general business operations; applicants; applicant information; applicant contact information; client information; client contact information; placement opportunities with clients; … and information obtained by or given to the Company about or belonging to its customers, potential customers or other third parties (the foregoing being hereinafter referred to collectively as Confidential Information), all of which is confidential in nature and, by virtue of this Agreement, proprietary in nature." Complaint, at Exhibit A, at 2.  The Agreement provides that "Employee" (in this case, Attis), would not disclose the "Confidential Information". *Id.*

The Agreement also contained restrictive covenants, purporting to restrain Attis from competing with BioPoint during, or within a year after termination of, her employment with BioPoint, and from soliciting BioPoint's alleged customers or "potential customers", "applicants", or employees. *Id.*, at 4.  The Agreement purported to restrict Attis from "solicit[ing], perform[ing] or engag[ing] in any business of the same or similar nature to the business of the Company anywhere within the Company Territory," which "Company Territory" is defined to include "each and every state or territory in which the Company has conducted,

transacted or solicited any business … within the twelve (12) months immediately preceding the date of Employee's termination ….".  *See* Complaint, Exhibit A, at 5.

Pursuant to its terms, the Agreement "shall be interpreted under and construed in accordance with the laws of the Commonwealth of Massachusetts", and provides that "[a]ny legal action or proceeding with respect to this Agreement ***shall be brought solely in the courts of the Commonwealth of Massachusetts.*** *Id.*, at 7 (emphasis supplied).

BioPoint alleges that it "provides consulting services and workforce solutions to clients in the life sciences (*e.g.*, pharmaceutical, biotechnology, and medical device) industry", and that BioPoint "partners with clients to provide them specialized expert consultants in areas including drug safety and risk management, regulatory affairs services, quality assurance consulting, clinical operations and biometrics, and clinical development." Complaint, at ¶¶ 9-10.  Companies in the life sciences industry (which BioPoint refers to in the Complaint as its current or prospective "clients" or "customers") have open positions for which they need to hire an employee.  Staffing companies like BioPoint recruit individuals looking for jobs (which BioPoint refers to in the Complaint as "candidates" or "consultants"), and then present such individuals to the client.  If the client hires the "consultant" recruited and presented by BioPoint, BioPoint will receive a commission. *See* Complaint, at ¶ 12.  BioPoint alleges that it uses a database called "Crelate" to "track prospective and current consultant placements and information about its clients," and alleges that the data in Crelate, as well as other broadly described categories of information BioPoint allegedly provides to its employees is confidential and constitutes a trade secret.  *Id.*, at ¶¶ 15-17.

BioPoint terminated Attis' employment on or about December 4, 2019 after, BioPoint alleges, Attis revealed to BioPoint that she had shared BioPoint's information with her then-

fiancé (now husband), Defendant Andrew Dickhaut ("Dickhaut"). Complaint, at ¶¶ 61, 63.
Over a month later, on or about January 21, 2020, BioPoint filed its initial Complaint in this case
and filed an affidavit of service. *See* Complaint filed on January 21, 2020, at Dkt. No. 1.
BioPoint also filed a motion titled "Motion for Leave to File Targeted Expedited Discovery,"
seeking to conduct discovery of the named Defendants prior to a Fed. R. Civ. P. 16 scheduling
conference, which motion the Court allowed. *See* Dkt. No. 9.  BioPoint then filed its Amended
Complaint, before any of the Defendants had appeared in the case. *See* Dkt. No. 11.  BioPoint
did not serve the Amended Complaint in accordance with Fed. R. Civ. P. 4, but purported to
serve it by simply mailing a copy to the named parties, even though none had entered an
appearance.

BioPoint alleges that Attis, while employed by BioPoint and shortly after her termination
from BioPoint, violated the Agreement.  *See* Complaint, at ¶¶ 20-27, 68-72.  BioPoint alleges
that Attis disclosed certain of its allegedly confidential and proprietary information to the
Dickhaut and Dickhaut's employer, Catapult Staffing LLC d/b/a Catapult Solutions Group
("Catapult"), and that she used and/or misappropriated BioPoint's confidential information.  *See*
Complaint, at ¶¶ 73-89.  BioPoint also alleges that Attis interfered with BioPoint's prospective
relationships with certain consultants and clients, and that she rejected certain business
opportunities offered to BioPoint through her and/or diverted such opportunities to Dickhaut and
Catapult. *See* Complaint, at ¶¶ 96-99.  The crux of BioPoint's allegations is that Attis shared
information BioPoint claims is its confidential and proprietary information with her then-fiancé,
that Dickhaut's employer Catapult is BioPoint's competitor, that Catapult obtained business
opportunities BioPoint sought, and that "upon information and belief," Attis provided

information to Dickhaut to aid Catapult (even though such alleged conduct would have undermined Attis' own career).[1]  Attis denies these allegations against her.

The Complaint alleges the following counts against Attis: (a) Count I, Breach of Contract; (b) Count II, Misappropriation of Trade Secrets in violation of M.G.L. c. 93, § 42; (c) Count III, Misappropriation of Trade Secrets in violation of 18 U.S.C. §§ 1831-39; (d) Count IV, Breach of Duty of Loyalty; and (e) Count V, Tortious Interference with Prospective Relationships.

## III.    ARGUMENT

### A.  STANDARD OF REVIEW

In the First Circuit, courts "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009).  When considering a motion to dismiss, a court may consider not only the complaint, but also documents attached to the complaint. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16 (1st Cir. 1998).  A court may also consider any document "integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint." *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005).  Here, the Court may consider the Agreement, which is attached to the Complaint and is integral to and explicitly relied upon by BioPoint in the Complaint.

A complaint must allege factual allegations that are "enough to raise a right to relief above the speculative level," (*Bell At. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), and the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[1] BioPoint does not allege that Attis is now employed by Catapult, nor can it, because Attis is not and has never been employed by Catapult.

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

**B.  The Claims Against Attis Are Subject to a Mandatory and Exclusive Forum Selection Clause**

   1.   <u>BioPoint Must Bring its Claims Against Attis in  Massachusetts State Court</u>

The Agreement contains a mandatory and exclusive forum selection clause.  In relevant part, the Agreement states:

> This Agreement shall be interpreted under and construed in accordance with the laws of the Commonwealth of Massachusetts.  Any legal action or proceeding with respect to this Agreement ***shall*** be brought ***solely in the courts of the Commonwealth of Massachusetts***.  By execution and delivery of this Agreement, each of the parties hereto accepts for itself and in respect to its property, generally and unconditionally, ***the exclusive jurisdiction of the aforesaid courts***."

Complaint, at <u>Exhibit A</u>, at 7 (emphasis supplied).

This clear, unequivocal language mandates that BioPoint bring its claims against Attis which are "with respect to" the Agreement solely in the courts of the Commonwealth of Massachusetts, and the Massachusetts state courts therefore have exclusive jurisdiction over such claims. *See LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.,* 739 F.2d 4, 7 (1st Cir.1984) (interpreting a clause stating that the contract shall be interpreted according to "the law, and in the courts, of the Commonwealth of Massachusetts" to designate the state courts of Massachusetts because "the word 'of' as it appears in the phrase in question must have been intended to restrict the meaning of both 'law' and 'courts' to those that trace their origin to the state.").[2]  The phrase "of the Courts of the Commonwealth of the Massachusetts" unambiguously

---

[2] Other circuits have also applied this common-sense interpretation to identical language in other contracts. *American Soda, LLP v. U.S. Filter Wastewater Group. Inc.,* 428 F.3d 921, 925 (10th Cir. 2005) (holding that the clause "Courts of the State of Colorado" is not ambiguous and refers only to state courts in the State of Colorado); *Dixon v. TSE Int'l, Inc.,* 330 F.3d 396, 398 (5th Cir.

refers to state courts and excludes federal courts. *R.E. Moulton, Inc. v. RAC Associates, LLC*, 2009 WL 4730990, * 2 (D.Mass. Dec. 8, 2009) (Saris, J.) ("The United States District Court is located *in* the Commonwealth, but it is not a court *of* the Commonwealth"); *see Kelly v. Riverside Partners, LLC,* 397 F.Supp.3d 75, 85 (D.Mass. 2019) ("Federal courts by definition are not "courts of" the state in which they are situated …").[3]

2.    The Forum Selection Clause is Mandatory, Exclusive, and Reasonable

The threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory. *Rivera*, 575 F.3d at 17 (upholding dismissal of case brought in United States District of Puerto Rico, where enforceable agreement contained mandatory forum selection clause under which plaintiff had agreed to bring claims in the courts of the Commonwealth of Puerto Rico).  "[M]andatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum."  *Id*. The applicability of a forum selection clause does not depend on the nature of the underlying action. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991) (enforcing non-negotiated forum selection provision contained in passengers' cruise tickets in a personal injury action).

---

2003) (the phrase "The Courts of Texas, U.S.A., shall have jurisdiction over all controversies" refers only the state courts, and stating "[f]ederal district courts may be *in* Texas, but they are not *of* Texas");  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir.2009) (holding that the phrase "courts of Virginia" "refers to courts proceeding from, with their origin in, Virginia—i.e., the state courts of Virginia. Federal district courts, in contrast, proceed from, and find their origin in, the federal government."); *but see Stateline Power Corp. v. Kremer*, 148 Fed.Appx. 770, 771 (11th Cir.2005) (phrase "courts of the State of Florida" was ambiguous, and would be resolved against the party who drafted the forum selection clause).

[3] Even if there was any ambiguity in the phrase "Courts of the Commonwealth of Massachusetts," such ambiguity must be construed against party who drafted the Agreement, which is BioPoint. *See Chelsea Industries, Inc. v. Accuray Leasing Corp.*, 699 F.2d 58, 61 (1st Cir.1983); *LFC Lessors,* 739 F.2d at 8.  Had BioPoint intended to include federal courts within the forum selection clause, it easily could have added unambiguous language to that effect.

The forum selection clause in the Agreement is clearly mandatory, as it states that all claims with respect to the Agreement "shall be brought solely" in the courts of the Commonwealth of Massachusetts and further states that such the parties have agreed to the "exclusive jurisdiction" of such courts.

The proper remedy for an action which is filed in disregard of a valid forum selection clause is dismissal of the action.  *See Silva v. Encyclopedia Britannica Inc*., 239 F.3d 385, 389 (1 Cir., 2001).  Both federal and Massachusetts courts enforce forum selection clauses "if it is fair and reasonable to do so." *Jacobson v. Mailboxes Etc., U.S.A., Inc.*, 419 Mass. 572, 574-575 (1995); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907 (1972).  A party resisting the enforcement of a forum selection clause "must establish that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."" *Boland v. George S. May Intern. Co.*, 81 Mass.App.Ct. 817, 820 (2012) (citations omitted); *The Bremen*, 407 U.S. at 18; *see Huffington v. T.C. Group, LLC*, 637 F.3d 18, 23 (1st Cir. 2011).

It is fair and reasonable to enforce the forum selection clause in the Agreement, which BioPoint itself drafted and elected to include in an agreement it requires its employees to sign. BioPoint is a Massachusetts company, all of the allegations concern events and alleged misconduct occurring in Massachusetts, and BioPoint will suffer no grave difficulty or inconvenience if the forum selection clause is enforced.

3.    BioPoint's Claims Against Attis Are Within the Broad Scope of the
       Forum Selection Clause

The phrase that BioPoint chose to include in the Agreement's forum selection clause, "with respect to the Agreement", embraces all of the claims against Attis in this case.  A lawsuit is ""with respect to" the agreement if the suit is related to that agreement – at least if the

relationship seems pertinent in the particular context.'" *Huffington*, 637 F.3d at 22.  Courts

describe the phrase "with respect to" as synonymous with the phrases "with reference to,"

"relating to," "in connection with," and "associated with," and such phrases are "broader in

scope than the term 'arising out of,'" to be broader than the concept of causal connection, and to

mean simply 'connected by reason of an established or discoverable relation.'" *Id.* (citing

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) and *John

Wyeth & Bro. Ltd. V. CIGNA Int'l Corp.,* 119 F.3d 1070, 1074-75 (3d Cir. 1997)); *see Carter's

of New Bedford, Inc. v. Nike, Inc*., 790 F.3d 289, 293 (1st Cir. 2015) ("in connection with"

agreement, in the agreement's forum selection clause is "unambiguously broad" language and

encompasses claims under M.G.L. c. 93A).  Related statutory and tort claims may also be

considered "with respect to" the agreement containing the forum selection clause. *See

Huffington*, 637 F.3d at 22-23 ("with respect to" language encompassed not only contract claim

but misrepresentation claims and claims under M.G.L. c. 110A and c. 93A); *Carter's of New

Bedford, Inc.*, 790 F.3d at 293.

 All of the claims in this case arise from Attis' alleged breach of the Agreement and from

her alleged use or disclosure of the information that BioPoint has defined in the Agreement as

BioPoint's confidential information.  Count I alleges that Attis breached the Agreement, and this

claim is clearly within the forum selection clause's scope. Complaint, at ¶¶ 67-72.  Counts II and

III allege that Attis misappropriated BioPoint's allegedly confidential information, which

information BioPoint alleges is confidential and therefore a trade secret based on the broad

definition of confidential information contained in the Agreement, and because BioPoint

allegedly protects such information by, *inter alia,* requiring employees to sign the Agreement.

Complaint, at ¶¶ 17, 22-25, 75-77, 84-85.  Count II alleges misappropriation in violation of

M.G.L. c. 93, § 42, while Count II alleges violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831-39 ("DTSA").   Count IV alleges that Attis breached her alleged duty of loyalty to BioPoint, and Count V alleges that Attis interfered with BioPoint's alleged prospective business relationships. *See* Complaint, at ¶¶ 90-99.   Both Count IV and V are based on BioPoint's allegations that Attis engaged in competition against BioPoint, by allegedly disclosing BioPoint's confidential information about clients and consultants to an employee of an alleged competitor. *Id.*   These claims rely upon the definitions within the Agreement of BioPoint's alleged confidential information, its alleged clients and consultants, and the competitive activities that the Agreement prohibits. *See* Complaint, at ¶¶ 22-28.   Further, these claims are all clearly related to Attis' alleged breaches of the Agreement, and thus the claims against Attis in this case are all "with respect to" the Agreement.

## C.   BIOPOINT'S DTSA CLAIM FAILS

### 1.   There is No Nexus With Interstate Commerce

To the extent BioPoint attempts to evade application of the forum selection clause by alleging a claim under the DTSA, the DTSA claim fails in any event.[4]  BioPoint's sole stated ground for subject matter jurisdiction in this Court is its purported DTSA claim. *See* Complaint, at ¶ 5.  Without subject matter jurisdiction, this Court must dismiss the Complaint in its entirety. *See* Fed. R. Civ. P. 12(h)(3).

---

[4] Even if BioPoint had a viable claim under the DTSA, which it does not, all of BioPoint's claims would still be dismissed, as courts will decline to exercise jurisdiction over the claims which are subject to the forum selection clause and proceed only with those claims which are outside of its scope. *See Xiao Wei Yang Catering Linkage in Inner Mongolia Co. Ltd v. Inner Mongolia Xiao Wei Yang USA, Inc.,*  2017 WL 507211 (D.Mass. Feb. 6, 2017) (Casper, J.) (dismissing certain counts of the plaintiff's complaint, which would need to be litigated in China in accordance with the forum selection clause).

Here, there is no nexus between the allegedly misappropriated trade secrets and interstate commerce. A plaintiff may bring a claim under the DTSA for misappropriation of trade secrets only "if the trade secret is related to a product or service used in, or intended to be used in, interstate or foreign commerce". 18 U.S.C. § 1836(b)(1); *see Viken Detection Corporation v. Videray Technologies Inc.*, 2020 WL 68244, * 4 (D.Mass. 2020) (Gorton, J.). A failure to allege a nexus between the actual trade secrets allegedly misappropriated and interstate commerce warrants dismissal of a DTSA claim. *Government Employees Insurance Co. v. Nealey*, 262 F.Supp.3d 153, 173 (E.D. Pa 2017); *see also Hydrogen Master Rights, Ltd. v. Weston*, 228 F.Supp.3d 320, 337-38 (D. Del. 2017) (dismissing a DTSA claim because the complaint failed to allege any nexus between interstate or foreign commerce and the alleged trade secrets); *DLMC, Inc. v. Flores*, 2019 WL 309754, *2 (D. Hawai'i 2019) ("Absent at least an argument articulating how the "client lists" that Flores allegedly stole on behalf of LCHP relate to the provision of interstate commerce, and facts in support of that argument, the Court cannot conclude that it has jurisdiction over the DTSA claim or, hence, over this case"); *Bonumose Biochem, LLC v. Yi-Heng Zhang*, 2018 WL 10069553, * 6 (W.D. Va. 2018) (To state a claim under the DTSA, the complaint "must allege (1) that [Plaintiff] own[s] a trade secret, (2) that the trade secret was misappropriated, and (3) that the trade secret implicates interstate or foreign commerce.'"); *Mackintosh v. Lyft, Inc.*, 2019 WL 5682826, n. 5 (E.D. Cal. 2019) ("A properly–pleaded DTSA claim also requires facts indicating the trade secret was intended for use in interstate commerce …").

BioPoint vaguely asserts that "BioPoint and its clients conduct business across state lines", but it alleges no facts indicating that the allegedly misappropriated information constitutes a trade secret related to a product or service used in, or intended for use in, interstate or foreign

commerce. *See* Complaint, at ¶ 84.  To the contrary, the Complaint alleges that "a substantial part of the events or omissions giving rise to the claims herein occurred in this District", that Attis resides in and worked for BioPoint in Massachusetts, that Dickhaut resides and works in Massachusetts, and that Catapult is BioPoint's competitor precisely because Catapult is operating in Massachusetts. *See* Complaint, at ¶¶ 1, 2, 8, 33, 37.  BioPoint's conclusory assertion that its allegedly confidential information "is related to interstate commerce, as BioPoint and its clients conduct business across state lines" fails to plausibly allege any nexus between the alleged trade secrets at issue and interstate commerce. *See Iqbal*, 556 U.S. at 681 ("formulaic recitation of the elements" are not sufficient to state a claim).

2.     The Complaint Fails to Sufficiently Describe Any Alleged Trade Secret

The facts alleged in the Complaint fail to establish that any of the information Attis allegedly misappropriated was actually a trade secret.  The DTSA defines a trade secret, in pertinent part, as "information [that] derives independent economic value, actual or potential, from not being generally known to, and not be readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information". 18 U.S.C. § 1839(3)(A)-(B).  "The standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law." *Viken Detection Corp. v. Videray Techs. Inc.*, 384 F. Supp. 3d 168, 177 (D. Mass. 2019).

The Complaint fails to identify the allegedly misappropriated information with the requisite specificity.  *See Ferring Pharmaceuticals, Inc. v. Braintree Laboratories, Inc.,* 38 F. Supp. 3d 169, 175 (D.Mass. 2014); *see Sutra, Inc. v. Iceland Express, ehf,* 2008 WL 2705580, at *3–4 (D.Mass. July 10, 2008) (it is "hornbook law" that a plaintiff must identify the trade secret at issue with adequate specificity).   BioPoint alleges no facts plausibly suggesting that such

information "derives independent economic value … from not being generally known to, and not be readily ascertainable through proper means."   Most of the alleged confidential information BioPoint accuses Attis of misappropriating is unspecified "information about consultants". *See* Complaint, at ¶¶ 42.d., 43, 45, 46.a., 46.b., 46.c., 46.d., 55, 56.  Nothing in the Complaint plausibly alleges that such information was secret information belonging to BioPoint, rather than information belonging to the consultant seeking a job or the client seeking to fill an open position.  The consultants and clients could share such information with any competitor of BioPoint, and thus it is "readily ascertainable through proper means" and not a trade secret. *See Oxford Global Resources, Inc. v. Guerriero*, 2003 WL 23112398, at * 8-9 (D.Mass. 2003) ("[I]information about a third party is not confidential if competitors could obtain the same information directly from the third party").[5]

The only other information BioPoint claims constitutes a misappropriated BioPoint trade secret is: (a) an email from a prospective client of BioPoint; (b) an email Attis sent to Dickhaut in which she, allegedly, "detail[ed] BioPoint's core service offerings to its clients"; (c) an agreement between BioPoint and one of its clients; and (d) Attis' monthly commission report, which allegedly contained some, unspecified "proprietary client and consultant information." Complaint, at ¶¶42.a-c.  These allegations are deficient and fail to establish that any of the

---

[5] Jurisdictions which have considered trade secret claims in the context of staffing companies have determined that the kinds of customer and "consultant" information BioPoint refers to in its Complaint is *not* a trade secret. *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014), aff'd., 793 F.3d 748 (7th Cir. 2015) ("The identity of Instant's clients, the clients' hiring needs, and the qualifications of Instant's candidates are not secrets. Information regarding open positions is often available publicly, is provided to Instant's competitors by Instant's clients, and is provided by Instant to potential candidates Instant would like to place. The identity, qualifications, and availability of Instant's candidates are published on public job boards and known by Instant's competitors, who are often trying to place the same candidates."); *See, e.g., KForce, Inc. v. Beacon Hill Staffing Grp., LLC*, No. 4: 14 CV 1880 CDP, 2015 U.S. Dist. LEXIS 1861, *4-5 (E.D. Mo. 2015).

information disclosed was BioPoint's trade secret.  For instance, there is no reason that the kinds of services BioPoint offers to its clients would be a trade secret – ostensibly, BioPoint would want to publicize to potential clients the services it offers.  Further, BioPoint's conclusory assertion that Attis' personal commission report contains some unidentified "client and consultant information" also fails to allege the existence of a trade secret.[6]  The Complaint does not allege facts describing the allegedly secret information in these communications or documents, or facts which establish that any of this information is secret and from which BioPoint derives independent economic value because it is not ascertainable by others. BioPoint's DTSA claim thus fails.

> **D.    BioPoint's State Statutory and Tort Claims Fail**

> 1.    <u>BioPoint's Massachusetts Uniform Trade Secret Act Count Fails to State a Claim</u>

As explained in detail above, BioPoint has failed to identify with adequate specificity the allegedly misappropriated information, and it has failed to allege facts plausibly suggesting that any such information is BioPoint's protectable trade secret.  The analysis under the DTSA is substantially similar to that under Massachusetts law, and BioPoint's allegations thus fail to satisfy a state claim for trade secret misappropriation for the same reasons stated above.  *See Viken Detection Corp.*, 384 F. Supp. 3d at 177 (D. Mass. 2019).

Further, BioPoint purports to bring Count II under the Massachusetts Uniform Trade Secrets Act, M.G.L. c. 93, §§ 42-42G, and, to the extent the Complaint alleges that Attis misappropriated information (or began a pattern of misappropriating information) prior to October 1, 2018, this statute is inapplicable.  The statute took effect on October 1, 2018 and

---

[6] *See Patriot Energy Group, Inc. v. Kiley,* 32 Mass. L. Rptr. 169, at * 11 (Mass. Super. 2014) (finding that a commission report did not contain significant trade secrets)

"does not apply to any violations that occurred before October 1, 2018 or began prior to October 1, 2018 and continued past that date." *Maine Pointe, LLC v. Collins,* 2018 WL 5303038, at * 4 (D.Mass. Oct. 25, 2018).

        2.     <u>BioPoint's Breach of the Duty of Loyalty Count Fails to State a Claim</u>

        Under Massachusetts law, a duty of loyalty only attaches to certain employees. Executives, directors, other senior officers, and partners must refrain from competing with their employer during their employment. *Advanced Micro Devices, Inc. v. Feldstein*, 951 F.Supp.2d 212, 219-220 (2013) (citing *Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729, 736 (1st Cir.1982); *Sterling Research, Inc. v. Pietrobono,* 2005 WL 3116758 at *10 (D.Mass. Nov. 21, 2005); *Meehan v. Shaughnessy,* 404 Mass. 419, 433, 535 N.E.2d 1255 (1989)). "Rank-and-file" employees are not captured by the employee's duty of loyalty unless they occupy "a position of trust and confidence." *TalentBurst, Inc. v. Collabera, Inc.,* 567 F.Supp.2d 261, 266 (D.Mass.2008).

        Other than the boilerplate and conclusory assertion that Attis "occupied a position of trust and confidence while employed at BioPoint", and the repeated allegations that Attis had access to confidential information, BioPoint has failed to allege facts demonstrating that she is not a rank-and-file employee and is instead an employee who occupied some special position of trust and confidence within BioPoint. *See* Complaint, at ¶¶ 29, 91-94.  It is undisputed that she was not an executive, director, senior officer or partner of BioPoint.  Attis was hired in the role of Business Development Manager, but is not alleged to have had any executive or supervisory role, and she did not have prior experience selling life sciences consulting services when she was hired in 2015. Complaint, at ¶ 18.   Attis' alleged access to confidential information does not suffice to turn her into an employee with a "position of trust and confidence" within BioPoint –

in fact, nothing in the Complaint indicates Attis had access to information that was not provided to all of BioPoint's employees.[7]  The Complaint in this case does not plausibly allege that Attis held a position of trust and confidence within BioPoint, especially where, as explained in detail above, BioPoint has failed to establish that the information to which she had access was actually BioPoint's confidential information.

    3.    <u>BioPoint Fails to State a Claim for Tortious Interference with Prospective Relationships</u>

"In order to make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." *Cavicchi v. Koski*, 67 Mass.App.Ct. 654, 657 (2006) (quoting *Kurker v. Hill*, 44 Mass.App.Ct. 184, 191, 689 N.E.2d 833 (1998)).  BioPoint's Complaint fails to allege the essential elements of this cause of action, as it does not allege facts establishing an actual business relationship, that Attis "interfered" with such relationship, or that any conduct by Attis caused BioPoint to lose the relationship.

The Complaint essentially alleges that, on several occasions when BioPoint was unsuccessful in placing a consultant with an alleged prospective client, Catapult was able to do

---

[7] This Court has stated that it "is wary of holding that any employee given access to any confidential information owes a fiduciary duty to his or her employer". *Advanced Micro Devices Inc.,* 951 F.Supp.2d at 220 (D. Mass. 2013) (ultimately denying motion to dismiss because the facts demonstrated that the employees in question were "hardware designers working for a high-tech business that generates much of its revenue from intellectual property" and it was therefore plausible that, in that specific instance, these employees actually held a position of trust and confidence in the plaintiff company).  Further, requiring an employee to sign an agreement with restrictive covenants does not create fiduciary obligations. *TalentBurst, Inc.,* 567 F.Supp.2d at n. 5 (D.Mass.2008).

so, and therefore, "upon information and belief" Attis must have provided some, unidentified information about the consultant to Dickhaut, a Catapult employee. Complaint, at ¶¶ 46.a.-d., 55, 56, 59-60.  For all of these allegations, BioPoint fails to explain who the consultants are, fails to allege facts demonstrating that BioPoint actually had a business relationship with either the consultant or the alleged client, and fails to allege facts demonstrating that BioPoint's alleged loss of the opportunity to place a consultant in a job with the client resulted directly from Attis' alleged sharing of information with Dickhaut.  For many of the alleged instances of interference, BioPoint fails to identify the alleged client or prospective client with which BioPoint allegedly had a business relationship.  BioPoint identifies only Vedanta, a company with which BioPoint merely *hoped* to establish a business relationship, based on the fact that a client contact of Attis's had taken a position with Vedanta. *See* Complaint at ¶ 47.

While a plaintiff need not establish the existence of a contract, the plaintiff must allege facts sufficient to show "an existing or even a probable future business relationship from which there is a reasonable expectancy of financial benefit," and must demonstrate they "enjoyed genuine prospects – rather than buoyant hope." *Bueller v. Carey,* 57 Mass.App.Ct. 1106, *1 (2003) (citations omitted) (unpublished).  BioPoint must, at a bare minimum, demonstrate harm to a "probable future business relationship anticipating a reasonable expectancy of financial benefit." *Brown v. Armstrong,* 957 F.Supp. 1293, 1305 (D.Mass. 1997); *see also Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48 (1st Cir. 2002) (applying Massachusetts law). Here, BioPoint alleges no facts to demonstrate an actual or probable business relationship with the unidentified consultants, with the unidentified clients or prospective clients, or with Vedanta.

BioPoint further fails to allege facts plausibly suggesting that Attis directed any conduct toward, much less "induc[ed] or otherwise caus[ed] [the consultant or client] not to enter into or

continue the prospective relation" with BioPoint. *Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass.App.Ct. 416, 427 (2002).  BioPoint alleges that Attis shared information, including unspecified "information about consultants" with Dickhaut, which information BioPoint speculates must have ultimately helped Catapult to obtain business that BioPoint wanted for itself.  Such attenuated, speculative assertions fail to plausibly allege that Attis interfered with BioPoint's business relationships or prospects, or that her conduct *caused* the consultants or clients not to enter into a business relationship with BioPoint.  BioPoint thus fails to state a claim for tortious interference with prospective business relationships.

### E.  BioPoint's Amended Complaint Should Be Dismissed for Improper Service

BioPoint failed to properly serve Attis with the amended Complaint in this case, instead purporting to serve it upon Attis by simply mailing the document to her home address.  Service of an amended complaint under Federal Rule of Civil Procedure 5, i.e., by mail, is only proper where (a) the original complaint was properly served; *and* (b) the defendants have appeared. *Cryer v. UMass Med. Correctional Health*, 2011 WL 841248, at * 1 (D. Mass. Mar. 7, 2011) (Saris, J.).  In this case, none of the Defendants had appeared at the time that BioPoint purported to serve the amended Complaint by sending it to each of the Defendants by mail.

Once challenged, "plaintiffs have the burden of proving proper service." *Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir.1992).  BioPoint has not and cannot satisfy this burden, and, pursuant to Federal Rule of Civil Procedure 12(b)(5), a district court may dismiss a complaint for a plaintiff's failure to properly effect service.  Dismissal is appropriate in this case.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Leah Attis, respectfully requests that this Court

dismiss all claims against her in this civil action, with prejudice.

Respectfully submitted,

**LEAH ATTIS**

By her attorneys

*/s/ Charlotte L. Bednar*
Gabriel T. Dym (BBO # 667083)
Charlotte L. Bednar (BBO # 657748)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two International Place, 16th Floor
Boston, Massachusetts  02110-2602
(617) 342-6800
(617) 342-6899 (fax)
gdym@eckertseamans.com
cbednar@eckertseamans.com

Dated:  February 14, 2020

## CERTIFICATE OF SERVICE

I, Charlotte L. Bednar, hereby certify that on this 14th day of February 2020, the
foregoing document was filed through the CM/ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Charlotte L. Bednar*
Charlotte L. Bednar