UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10118-RGS

BIOPOINT, INC.

v.

LEAH ATTIS; ANDREW DICKHAUT;
and CATAPULT STAFFING, LLC

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

March 25, 2020

STEARNS, D.J.

Plaintiff BioPoint, Inc., a life sciences consulting firm, alleges that defendant Leah Attis,[1] a Business Development Manager at BioPoint, improperly disclosed BioPoint's proprietary and confidential business information and know-how to her fiancé, defendant Andrew Dickhaut for the benefit of his consulting firm, defendant Catapult Staffing, LLC (Catapult). BioPoint's Amended Complaint alleges that Attis provided Dickhaut and

---

[1] The court previously determined that, consistent with the venue selection clause in Attis's Confidentiality Agreement, the claims against her must be brought in a Massachusetts state court. See Dkt # 37. Having been provided the opportunity to avoid bifurcation, see id., the parties have instead elected to litigate (it would seem redundantly) the claims against Dickhaut and Catapult, who are not signatories to the Confidentiality Agreement, in this court. See Dkt # 44.

Catapult with client and consultant leads, as well as proprietary BioPoint documents including a supplier agreement and a commission report. As a result, BioPoint lost valuable contracts with a potential client and a consultant. Against Dickhaut and Catapult, BioPoint asserts claims for misappropriation of trade secrets in violation of the Massachusetts Uniform Trade Secrets Act (MUTSA), Mass. Gen. Laws ch. 93, § 42 (Count II); misappropriation of trade secrets under the Defend Trade Secret Act (DTSA), 18 U.S.C. § 1831, *et seq.* (Count III); tortious interference with prospective relationships (Count V); and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 11 (Count VI). Dickhaut and Catapult now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). For the reasons to be explained, Dickhaut and Catapult's motion to dismiss will be DENIED.

Defendants first contend that BioPoint failed to establish subject matter jurisdiction in this court. A claim for trade secret appropriation may be brought under the DTSA "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In defendants' view, because BioPoint is a Massachusetts-based company, Attis and Dickhaut are Massachusetts-based individuals, and defendants' actions are alleged to have "occurred primarily

and substantially in Massachusetts," Am. Compl. ¶ 103, the Amended Complaint does not satisfy the interstate commerce element of the DTSA. BioPoints counters, and the court agrees, that it has alleged a colorable nexus with interstate commerce for pleading purposes. According to the Amended Complaint, both BioPoint and its clients (life sciences firms) conduct business "across state lines," Am. Compl. ¶ 84, and that Attis funneled to Dickhaut not only information concerning a specific Massachusetts-based client, but also information derived from Biopoint's Crelate database, a supplier agreement, and a commission report that may impact on Biopoint's interstate business relations. *See, e.g.*, *Yager v. Vignieri*, 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) ("Yager's position that the DTSA covers trade secrets related to his plastic surgery practice, which he contends serves clients in interstate commerce, is at least colorable.").

Defendants next argue that they are not liable under Count II because the MUTSA became effective only after October 1, 2018, *see* 2018 Mass. Acts ch. 228, § 70, while the events alleged in the Amended Complaint primarily span September of 2017 through July of 2018. The court, however, agrees with BioPoint that discreet acts of misappropriation that occurred after October of 2018 (such as the purloining of the November of 2018 commission report, *see* Am. Compl. ¶ 42(c)) fall under the MUTSA, and its

3

predecessor law, Mass. Gen. Laws ch. 93, § 42 (2017), governs earlier acts. *See Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 386 F. Supp. 3d 89, 95 n.3 (D. Mass. 2019).

Defendants next fault the misappropriation claims for failing to identify with specificity the trade secrets that were allegedly misappropriated. "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *J. T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970), quoting Restatement; Torts, § 757, comm. b. The court agrees with BioPoint, that for pleading purposes, at least its password-protected Crelate database is fairly construed as a trade secret. "The database includes data relating to BioPoint's communications with consultants and clients, internal notes, consultants' credentials, reference checks, and contracts." Am. Compl. ¶ 15; *see Healy*, 357 Mass. at 736 (a compilation such as a customer listing can constitute a trade secret). Moreover, BioPoint specifically alleges that information from the Crelate database was among the trade secrets that Attis provided to Dickhaut. *See id.* ¶¶ 46(b), 71, & 78.

With respect to Count V, defendants contend that the Amended Complaint neither alleges that Dickhaut and Catapult knew of BioPoint's

4

prospective business relationships, nor that they acted with an improper motive or means. *See Blackstone v. Cashman*, 448 Mass. 255, 260 (2007) ("To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions."). According to defendants, because Catapult and BioPoint offered the same consulting services, there can be no improper motive in their competing for the same clients. *See TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 269 (D. Mass. 2008) ("Advancement of one's economic interest, however, is not an improper motive"). The court, however, is satisfied that the Amended Complaint sufficiently alleges not simply competition, but competition by underhanded means, notably the unfair advantage Dickhaut derived from Attis's espionage and the insight it provided into BioPoint's prospective client and consultant leads. A misappropriation and exploitation of a competitor's trade secrets undoubtedly qualifies by any stretch of the imagination as an "improper means." *See United Truck Leasing Corp. v.*

*Geltman*, 406 Mass. 811, 817 (1990) (an improper means may include a violation of a statute or a common-law rule); *see also People's Choice Mortg., Inc. v. Premium Capital Funding, LLC*, 2010 WL 1267373, at *16 (Mass. Super. Mar. 31, 2010) (soliciting customers using stolen documents constitutes improper means). Because defendants' arguments as to Count VI are derivative of the preceding counts, they stumble for the same reasons.

Finally, defendants complain of insufficient service of the Amended Complaint. At the time BioPoint filed the Amended Complaint, defendants had yet to enter an appearance. BioPoint served the Amended Complaint under Fed. R. Civ. P. 5 rather than Rule 4. *See Cryer v. UMass Med. Corr. Health*, 2011 WL 841248, at *1 (D. Mass. Mar. 7, 2011) ("Generally, service of process of an *amended* complaint can only be accomplished under Rule 5 where: (1) the original complaint was properly served; and (2) the defendants have appeared." (emphasis in original)). As evidenced by the docket, defendants appeared within two weeks of the filing of the Amended Complaint, immediately sought and obtained reciprocal (and expedited) discovery, brought this motion to dismiss the Amended Complaint, and one would think incurred no actual prejudice from what would strike a less jaundiced observer as nothing more than a foot fault. Nonetheless, to avoid any future unpleasantry, BioPoint is directed to, within 7 days of this Order,

refile its Amended Complaint on the docket (now that defendants have entered appearances). Defendants will have 14 days thereafter to answer.

ORDER

For the foregoing reason, Dickhaut and Catapult's motion to dismiss is DENIED. Attis's motion to dismiss for improper venue is ALLOWED without prejudice. Dickhaut and Catapult are to answer within 14 days of BioPoint refiling its Amended Complaint.

SO ORDERED.
/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE