*Filed Under Seal*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIOPOINT, INC.<br>      Plaintiff,<br><br>vs.<br><br>ANDREW DICKHAUT and CATAPULT<br>STAFFING LLC d/b/a CATAPULT SOLUTIONS<br>GROUP<br>      Defendants. | CIVIL ACTION NO. 1:20-cv-10118-RSG<br>(Leave to File Under Seal Granted 4/28/21) |

### BIOPOINT INC.'S MEMORANDUM
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff BioPoint, Inc. ("BioPoint") moves for summary judgment dismissing Defendants Andrew Dickhaut's ("Dickhaut") and Catapult Staffing LLC's ("Catapult") (collectively "Defendants") counterclaims for tortious interference with a violation of M.G.L. c. 93A, § 11. In January 2020, BioPoint sued Defendants for misappropriation and related claims after learning that BioPoint's former employee, Leah Attis ("Attis"), had secretly been sharing its information with her husband, Dickhaut, and his employer, Catapult, to help them compete against BioPoint. Defendants at first tried various angles to avoid this case, including moving to dismiss BioPoint's claims. When these tactics failed, Defendants filed mirror image counterclaims against BioPoint, to make this case as Catapult's President said, a "two way street." Catapult's President also admitted that Catapult does not consider the information at issue in its misappropriation claims to be trade secret. Faced with these admissions, Catapult ultimately agreed to dismiss its misappropriation claims and their relation to the Chapter 93A claim.

What remains are Catapult's and Dickhaut's claims that BioPoint interfered with their relationship with their client, Vedanta BioSciences, Inc. ("Vedanta"), by causing Vedanta to

*Filed Under Seal*

cancel its contract with Catapult in April 2020, and a violation of Chapter 93A related to this alleged interference. Catapult and Dickhaut produced no evidence of BioPoint's involvement, let alone interference, in Vedanta's decision to cancel their contract. Instead, Catapult and Dickhaut conceded that Vedanta previewed winding down their agreement four months prior to cancellation – at a time when BioPoint had not yet even filed this litigation. Otherwise, Vedanta told Catapult it was ending their agreement to bring the services Catapult was providing in-house. Dickhaut's conjecture that Vedanta's knowledge of this suit caused it to cancel the agreement is not supported by the record. Even if it were, that fact cannot prove interference, as a matter of law. Because Catapult's and Dickhaut's 93A claim is premised on the alleged tortious interference relating to the Vedanta contract, Catapult and Dickhaut cannot support this claim either.

Accordingly, Catapult and Dickhaut cannot establish a genuine issue of material fact as to their counterclaims, and BioPoint is entitled to judgment as a matter of law on each of those claims.

## UNDISPUTED MATERIAL FACTS

I.   The Parties

BioPoint is a life sciences consulting company founded in 2011. BioPoint's Statement of Undisputed Material Facts ("SUF") ¶ 1. In or around May 2015, BioPoint hired Attis as a Business Development Manager. *Id.* ¶ 3. Her responsibilities included generating new business with life sciences companies and servicing existing client accounts. *Id.* ¶¶ 2-3. Attis agreed as a condition of her employment that she would not improperly use or disclose BioPoint's information. *Id.* ¶ 4.

Catapult is a consulting firm formed in 2004 with multiple offices around the United States. *Id.* ¶¶ 7-9. In spring 2017, Catapult started its Massachusetts office. *Id.* ¶ 10. At the

*Filed Under Seal*

time, Catapult did not provide life sciences consulting services, but instead specialized in other industries. *Id.* ¶¶ 7, 15. Catapult hired Dickhaut to launch its Massachusetts office. *Id.* ¶ 10. A year later, in spring 2018, Catapult hired Angelo Salustri ("Salustri") as its Senior Vice President, to work with Dickhaut. *Id.* ¶ 12. Around the end of 2019, Salustri became President of Catapult. *Id.*

Attis, Dickhaut, and Salustri have known each other for years, having worked together at a consulting firm prior to 2015. *Id.* ¶¶ 5, 13-14. Dickhaut and Attis were engaged when she worked at BioPoint. *Id.* ¶ 5. They are married now. *Id.*

II.    <u>BioPoint Sues Defendants and Defendants File Counterclaims in Response</u>

On December 4, 2019, BioPoint terminated Attis' employment. *Id.* ¶ 19. On January 21, 2020, BioPoint filed a complaint against Attis, Dickhaut and Catapult bringing claims of misappropriation of trade secrets, tortious interference and unfair competition under M.G.L. c.93A.[1] *Id.* ¶ 20. On April 10, 2020, Catapult and Dickhaut filed these same claims against BioPoint, on the ground that this litigation ought to be "a two-way street." *Id.* ¶¶ 21, 23. Specifically, they allege that (1) BioPoint misappropriated five pieces of information through Attis (Counts I and II); (2) BioPoint tortiously interfered with Catapult's relationship with its client, Vedanta, based on Vedanta cancelling its contract with Catapult (Count III), and (3) these specific acts constitute unfair and deceptive trade practices under M.G.L. c.93A (Count IV). *Id.* ¶ 21.

On April 28, 2021, Catapult filed a Stipulation of Dismissal with Prejudice as to Counts I and II, relating to misappropriation of trade secrets, as well as the related trade secret allegations

---

[1] The case was bifurcated in March 2020, and Attis was dismissed from the instant case. BioPoint subsequently filed its claims against Attis in state court. That case remains ongoing.

*Filed Under Seal*

underlying the Chapter 93A claim (Count IV). *Id.* ¶ 25. This stipulation came after Salustri admitted at deposition that Catapult filed its claims of misappropriation against BioPoint, simply because BioPoint had done so first. *Id.* ¶ 23. He also testified that Catapult <u>does not</u> actually consider the five pieces of information it identified in its counterclaims to be Catapult's trade secrets. *Id.* ¶ 24.

III.     <u>BioPoint Had Zero Involvement in Vedanta's Decision to Fire Catapult</u>

Catapult and Dickhaut also allege that BioPoint intentionally interfered in Catapult's relationship with its client, Vedanta, causing Vedanta to cancel its MSP agreement with Catapult, and that this separately constitutes a violation of M.G.L. c.93A. *Id.* ¶ 26. In December 2018, Catapult and Vedanta entered an MSP agreement. *Id.* ¶ 28. An MSP is responsible for finding and placing consultants, either on its own, or by engaging with a consulting firm, to provide consultants. *Id.* ¶ 29. Here, Catapult was the MSP for Vedanta, and it was responsible for managing Vedanta's contingent labor needs. Dickhaut was principally responsible for managing this project. *Id.* ¶¶ 29-30.

On April 6, 2020, Vedanta notified Catapult that it was cancelling their MSP agreement. *Id.* ¶ 32. For reference, the MSP agreement allows for either party to cancel the agreement with thirty days' notice. *Id.* ¶ 28. Salustri admitted at deposition that Catapult has no basis for believing that BioPoint had anything to do with Vedanta's decision to cancel the agreement. *Id.* ¶¶ 37-38. In fact, Salustri testified that in December 2019, <u>before BioPoint filed this lawsuit,</u> Vedanta had cut Dickhaut's hours by fifty percent, because things were slowing down. *Id.* ¶ 33. Salustri further admitted that he is not aware of any involvement by BioPoint in Vedanta's decision to terminate the MSP agreement, nor did anyone tell him that BioPoint had such involvement. *Id.* ¶ 37-38. On top of that, Dickhaut testified that Vedanta's CEO told Dickhaut

4

*Filed Under Seal*

that it was cancelling the MSP agreement because Vedanta planned to manage its contingent workforce in-house going forward. *Id.* ¶ 34.

BioPoint has had <u>zero</u> communication with Vedanta since before Attis' termination. *Id.* ¶ 39.

## ARGUMENT

I. <u>Catapult and Dickhaut Cannot Prove Interference by BioPoint</u>

Catapult and Dickhaut have not surfaced a single piece of evidence to support their assertion that "BioPoint interfered with [Catapult's and Dickhaut's] contractual relationship with Vedanta through improper motive or means to try to obtain this relationship for itself." ECF Doc. No. 49 (Counterclaim at Count III, ¶ 64). Catapult and Dickhaut must satisfy four elements in order to support their claim for tortious interference with a contractual relationship: (1) Catapult had a contract with Vedanta; (2) BioPoint knowingly induced Vedanta to break that contract; (3) BioPoint's interference, in addition to being intentional, was improper in motive or means; and (4) Catapult was harmed by BioPoint's actions. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006) (citing *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262 (Mass. 1991)).

BioPoint does not dispute that Catapult had an MSP agreement with Vedanta. Yet there is not one piece of evidence in the record showing that BioPoint knowingly induced Vedanta to terminate this agreement, let alone interfered with Catapult's relationship through improper means. Salustri admitted that no one at Vedanta told him or Dickhaut that BioPoint was involved in Vedanta's decision to end the agreement, and he otherwise had no reason to believe BioPoint was involved. SUF ¶¶ 37-38. In fact, according to Salustri, Vedanta canceled half of

5

*Filed Under Seal*

Catapult's MSP services a month before BioPoint filed this lawsuit, to accommodate a slowdown in Vedanta's hiring needs. *Id.* ¶ 33.

When asked what the basis is for his allegation that BioPoint in some way caused Vedanta to cancel its contract with Catapult, Dickhaut testified that after BioPoint filed the instant litigation that Vedanta began treating him differently. *Id.* ¶ 36. Even if it were true that Vedanta's decision to terminate the agreement was somehow related to BioPoint's filing of the lawsuit, this would not be sufficient to show that BioPoint "knowingly induced" Vedanta to break the relationship and did so with improper motive or means.

To satisfy the third element of an improper motive or means, "the improper conduct must extend beyond the interference itself." *Ventiv Health Consulting, Inc. v. Equitas Life Sciences*, 289 F. Supp. 3d 272, 283 (D. Mass. 2017) (internal citations and quotations omitted). There are cases where filing a lawsuit is the "improper conduct," but in those cases one party sues another over a contract involving a third-party, and the lawsuit causes the third-party to cancel or modify the contract. *See G.S. Enterprises, Inc.*, 410 Mass. at 262-68 (denying summary judgment on interference claim where marina offers to buy a boat yard; boat yard sells to developer; marina seeks specific performance against boat yard, and because of the litigation, developer cancels its transaction with the board yard); *Cortell v. Putnam*, 1996 Mass. Super. LEXIS 46 (Mass. Super Ct. July 26, 1996) (denying motion to dismiss majority shareholders' claim of interference against shareholder where corporation enters sale of its assets to acquiring corporation, and shareholder sues both corporation and acquiring corporation to prevent sale). These types of cases do not apply to this situation. Here, BioPoint sued Defendants over misappropriation of its information. BioPoint's claims have nothing to do with the Vedanta Agreement, and Vedanta was never even subpoenaed in this case. Instead, the undisputed fact is that Vedanta told

6

*Filed Under Seal*

Catapult that it canceled the agreement because of its own business needs. SUF ¶ 18. If Vedanta somehow found out about this litigation and decided to fire Catapult because of it that fact is not in the record.

Even if it were, mere knowledge of a litigation does not establish interference. *See Skenderian v. Data Tech.,* 2001 Mass. Super. LEXIS 654, a t *8 (Mass. Super. May 17, 2001) (dismissing interference claim based on filing lawsuit, where "the only evidence of ulterior purpose proffered by [Counterclaim Plaintiff] is the fact that [Plaintiff] filed his complaint within weeks of learning that [Counterclaim Plaintiff] was negotiating the sale of its stock to [a third-party]"). Rather, Defendants have the burden of showing some wrongful motive on the part of BioPoint. *See G.S. Enterprises, Inc.*, 410 Mass. at 273 ("[A] civil action is wrongful if its initiator does not have probable cause to believe the suit will succeed, and is acting primarily for a purpose other than that of properly adjudicating his claims."). The question of motive can be evaluated "against objective standards." *Id.* BioPoint's lawsuit survived a motion to dismiss, and now the record is undisputed that Attis gave Dickhaut BioPoint's information, which he used for Catapult's business. SUF ¶ 18. Based on these facts, BioPoint's lawsuit about misappropriation cannot support a claim of interference.

Accordingly, there is no evidence from which a reasonable jury could find that BioPoint tortiously interfered with Catapult's and Dickhaut's contractual relationship with Vedanta.

II.     Catapult's 93A Claim Fails Alongside Its Interference Counterclaim.

Massachusetts General Law ch. 93A, § 2 provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Here, Catapult and Dickhaut premise their 93A claim on the alleged acts of misappropriation and tortious interference pleaded in their counterclaims. (Counterclaim at Count IV, ¶ 68). As stated

7

*Filed Under Seal*

above, Catapult voluntarily stipulated to dismiss its misappropriation claims and their connection to the 93A claim. Because there is no evidence to support the remaining unlawful interference claim, the 93A claim necessarily fails as well. *See ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd.*, 2020 U.S. Dist. LEXIS 118380, at *10-11 (D. Mass. July 6, 2020) ("When a Chapter 93A claim is wholly derivative of the tortious interference claim, and where 'the evidence [is] insufficient to establish improper motive or improper means on the part of the defendant, it is likewise insufficient to establish an unfair method of competition or an unfair or deceptive act or practice.'"); *Forward Fin., LLC v. Bus. GPS, LLC*, 2019 U.S. Dist. LEXIS 104795, at *5 (D. Mass. June 24, 2019) ("Plaintiff's 93A claim is based on defendant's allegedly tortious interference and is thus derivative of Count I. For the same reasons that defendant's motion for summary judgment on Count I fails, so too does its motion with respect to Count II.").

## Conclusion

For the foregoing reasons, BioPoint requests that the Court grant its motion for summary judgment on Defendants' counterclaims.

BIOPOINT, INC.,
By its attorneys

/s/ _Allison L. Anderson_____
James W. Bucking (BBO#558800)
Madeleine K. Rodriguez (BBO#684394)
Allison L. Anderson (BBO#687662)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
617 832 1000
jbucking@foleyhoag.com
alanderson@foleyhoag.com
mrodriguez@foleyhoag.com

Dated: May 3, 2021

*Filed Under Seal*

# CERTIFICATE OF SERVICE

     I certify that on May 3, 2021, the foregoing document was filed via email, under seal, with the Court's Clerk, and simultaneously served on Defendants' counsel via email at the address: Dana Zakarian, dana.zakarian@smithduggan.com.

                                               /s/ *Allison L. Anderson*
                                               Allison L. Anderson

**CERTIFICATE OF SERVICE**

      I certify that on May 11, 2021, Counsel for Defendants approved for public filing the foregoing document, previously filed under seal on May 3, 2021. I further certify that on May 11, 2021, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                               */s/ Allison Anderson*
                                               Allison Anderson