IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIOPOINT, INC.<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW DICKHAUT and CATAPULT STAFFING, LLC d/b/a CATAPULT SOLUTIONS GROUP<br><br>    Defendants. | CIVIL ACTION NO. 1:20-CV010118 |

**PLAINTIFF BIOPOINT INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR DIRECTED VERDICT AT THE BENCH TRIAL**

Defendants Andrew Dickhaut ("Dickhaut") and Catapult Staffing LLC's ("Catapult") (collectively "Defendants") motion for directed verdict (the "Motion") should be denied. Procedurally, a motion for directed verdict is appropriate only in a jury trial – which this is not; when made in a bench trial, a motion for directed verdict is treated as a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). *See BRT Mgmt. LLC v. Malden Storage, LLC,* 2021 U.S. Dist. LEXIS 1711886, at *94 (D. Mass. Sept. 10, 2021). A court should only enter judgment under Rule 52(c) when a party has finished presenting evidence and that evidence is deemed by the court insufficient to sustain the party's position. *Id.* at *94-95.

Defendants do not meet this standard. Instead, Defendants characterize clearly disputed – and in certain cases disproven – evidence as "undisputed," invent procedural history that is factually inaccurate, and ignore the jury verdict returned in favor of BioPoint in order to support

1

their arguments. By doing so, Defendants are effectively seeking to short-circuit the Court's deliberations on the remaining issues in this case. But the Court already ordered that the parties would present up to four hours of additional evidence at the bench hearing, plus post-hearing briefing on the bench and jury trial evidence with legal analysis. As described herein, there is no justification to rely on an obscure procedural rule to prematurely decide the case.

I. There is Overwhelming Evidence Presented at both the Jury and Bench Trials Supporting BioPoint's Trade Secret Claims

Defendants repackage in this Motion their already failed argument that BioPoint did not meet its burden on its trade secret claims. They say, in particular, that, "Plaintiff admitted that it does not own the information regarding its consultants (*e.g.*, their name and resumes)." Motion at 2. This ignores the law, which provides that even while names or resumes may be in the public domain, BioPoint has developed recognized trade secrets as a result of the time and effort exerted in developing specific knowledge of its potential and actual consultants and clients. As the Court stated in its decision denying Defendants' Motion for Summary Judgment:

> BioPoint has presented documentary evidence that Attis shared with Dickhaut information, such as a draft supplier agreement including comments reflecting BioPoint's negotiation strategies [] and a commission report including consultant names, bill rates, pay rates, and profit spread []. Such information would certainly provide any competitor with a meaningful business advantage by enabling it to pilfer business opportunities while avoiding business development costs. No serious argument can be made that BioPoint would have otherwise been willing to share this information freely with competitors.

ECF 102, pp. 8-9 (citing *Ooyala, Inc. v. Dominguez,* 2018 WL 3360759at *6 (D. Mass. July 10, 2018)). BioPoint presented this evidence and far more at trial.

BioPoint has never claimed to own consultant or client names, but instead owns information about those consultants and clients, the services it provides for them, the hiring managers it work with, its pay and bill rates, and any requisition requests that may exist at a given

2

time. The considerable evidence of theft of BioPoint's most sensitive business information is more than sufficient to deny the Motion. *See, e.g.,* Exs. 3, 8, 12, 28, 58, 71, 78, 80, 101.[1] Indeed, it is on this and like evidence presented during the jury trial that the jury found by a preponderance of the evidence that Defendants misappropriated trade secrets owned by BioPoint concerning consultants Candida Fratazzi, Stephen Haworth, Chris Da Costa, and clients Vedanta and Shire/Takeda. And it is on the same evidence that BioPoint is seeking judgment on its c. 93A claim. This Court has previously decided that it will not disturb the factual predicate, *i.e.* the jury verdict, for that claim.

Defendants' Motion is also premised on the false idea that just because Defendants said something was true, then a factfinder must conclude that to be the case. They claim, for example, that if Mr. Dickhaut and Ms. Attis testified that they never shared information about a particular consultant or client that must be the case unless disproven by an email or text message presented at trial. But this position defies common sense, the evidence in this case, and the law. *See* Jury Instructions, C.A. No. 20-10118 (Jun. 21, 2022) (TRANSCRIPT) at 6-9 (Jury instructions on circumstantial evidence and credibility of witnesses). As this Court has already explained, something may be true "even though you have no direct evidence of that fact" and a factfinder may choose to find that nothing a witness says is true. *Id.* Indeed, the jury, applying these exact rules, rejected the contention put forth in Defendants' Motion, finding that Ms. Attis did share BioPoint's trade secrets about certain consultants and clients. Defendants request in this Motion that the Court make illogical and circumstantial leaps is not only inconsistent with the relief being

---

[1] That employees may not be able to download or print a report from Crelate is a red herring. First, BioPoint is not solely relying on the Crelate profile as its only trade secret at issue. As explained at the jury trial, there are significant amounts of trade secrets at issue. Second, as Mr. Nash testified, there are other ways this information could have been shared, such as by taking photos and verbal communications.

sought, but especially problematic here where there is ample evidence of Mr. Dickhaut and Ms. Attis not being honest.

Moreover, Defendants' specific argument that BioPoint failed to present "any evidence as to any of the elements of its trade secret claim" regarding Mr. Haworth and Mr. Da Costa is a mischaracterization of the record. As to both, Defendants' claim of "undisputed evidence" that these individuals were "found" on LinkedIn is disingenuous. Simply stating something is undisputed (especially in the conclusory fashion Defendants have done here) does not make it so. In reality, the evidence showed that prior to April 2019, Attis knew of Haworth and Da Costa as "clin dev" consultants; on April 11, 2019, Dickhaut sent Attis a "clin dev" job opening that he was trying to fill; that same day, April 11, Attis texted Dickhaut she had "2 candidates aside for him"; and soon after, Dickhaut placed BioPoint's two consultants, Da Costa and Haworth, at Vedanta. *See* Exs. 22, 19, 64, 82, 85. Likewise, Defendants' claim that BioPoint "failed to present any evidence as to any of the elements of its trade secret claim regarding Vedanta" similarly belies the record. To the contrary, the evidence showed that Mr. Dickhaut and his employer, Catapult, used BioPoint's business secrets, which he received from his wife and former BioPoint employee, Leah Attis, on a regular basis, to land and service the Vedanta account. Specifically, BioPoint presented evidence that Catapult (1) used BioPoint's trade secrets to make a first placement with Vedanta at a time when it had virtually no life science business of its own; (2) used more trade secrets – for example, consultant names and like information, pricing, contracts – to secure a Managed Services Provider (MSP) agreement with Vedanta; and then (3) used even more trade secrets to meet the needs of the MSP agreement. There is thus more than enough evidence to defeat Defendants' Motion.

Defendants next argue that BioPoint failed to adduce evidence of malice such that BioPoint should not be allowed to recover its attorney's fees on its trade secret claim. As with the other arguments, this one too misses the mark. In the trade secret context, courts have defined malice as ill-will or intent to cause injury. *See Allstate Ins. Co. v. Fougere,* 2021 U.S. Dist. LEXIS 253232, at *7 (D. Mass. Mar. 31, 2022). Here, there is plenty of evidence that Defendants knowingly and intentionally used BioPoint's information in order to place the same consultants and land the same clients that BioPoint was seeking to place or land. Put another way, the evidence shows that Defendants wanted to beat out BioPoint, its competitor in the same space, using BioPoint's information to do so. That evidence reveals the requisite malice to cause injury. Mr. Dickhaut even stated as much, texting Mr. Swiniarski "we win" in reference to taking one of BioPoint's deals. Defendants' argument to the contrary on malice boils down to this: there could not possibly be malice because Mr. Dickhaut and Ms. Attis are married. That argument holds no weight; in fact, it wholly conflicts with the overwhelming evidence presented in this case. As demonstrated here, there is nothing incompatible about caring for someone generally and nonetheless attempting cause injury to her (or her employer) in specific ways.

Finally, on the type of damages at issue here, Defendants claim in footnote one of their Motion that BioPoint "sneak attacked" them on the eve of trial. Their position is contradicted by discovery and Defendants' own conduct. In discovery, BioPoint disclosed to Defendants that it "seeks damages for…the unjust enrichment caused by their misappropriation… [for] clients, such as .. Vedanta" and indicated it would be looking to Catapult's profit figures to determine these amounts. *See* ECF 194, p. 3. Defendants understood this. In two pretrial filings, Defendants conceded that the Court reserved for the bench trial the question of whether to disgorge Catapult's profits for Vedanta and certain consultants. *See* ECF 107, 149. In one submission, on May 18,

5

2022, Catapult even made a chart listing the exact dollar amounts at issue under BioPoint's claim for unjust enrichment damages:

| Person/Entity | Type of Damages | Amount of Claim | Jury Right |
|---|---|---|---|
| Candida Fratazzi | Lost Profits | $5,000 a week for 6-12 months (i.e., $130,000 - $260,000) | Yes |
| Chris Foley | Unjust Enrichment | $8,900 | No |
| Chris Da Costa | Unjust Enrichment | $23,920 | No |
| Stephen Haworth | Unjust Enrichment | $41,595 | No |
| Jordan Pothier | Unjust Enrichment | $19,800 | No |
| Vedanta[2] | Unjust Enrichment | $1.375 million[3] | No |

ECF 149 (extracted from Defendants' opposition to BioPoint's motion *in limine* on damages).

If any party is trying to use surprise evidence, it is Defendants, not BioPoint. At the Bench Trial, Defendants offered evidence contradicting its own sworn interrogatory answer, to try to offset the profits it earned on Vedanta. Catapult's President testified that this evidence could have been provided to BioPoint during discovery (as it was available then), but admitted that Catapult withheld it until the eve of trial.

II.   <u>BioPoint has Presented Significant Evidence on its Chapter 93A Claim</u>

On the c. 93A claim, Defendants' Motion includes a single sentence that "BioPoint has failed to adduce evidence sufficient to establish any unfair and deceptive trade practice." Not so. The jury found misappropriation and interference and as the Court has already said, those factual findings are resolved for purposes of adjudicating the c. 93A claim.

Defendants apparently think this procedural history does not matter. But there is no dispute that the conduct forming the basis of BioPoint's c. 93A claim is the same as that at issue in its misappropriation and interference claims. Indeed, both parties and the Court have made reference to this fact in prior motions and orders, saying that the c. 93A claim rises and falls with BioPoint's other claims. *See* ECF 102 at 12 ("Because BioPoint's fourth claim – unfair and deceptive business

practices – derives from its misappropriation and tortious interference claims, it too survives summary judgment.").

Accordingly, for the reasons set forth above, the Court should deny Defendants' Motion.

> BIOPOINT, INC.,
>
> By its attorneys
>
> /s/ *Allison A. Anderson*
> James W. Bucking (BBO#558800)
> Allison L. Anderson (BBO#687662)
> Madeleine K. Rodriguez (BBO#684394)
> Foley Hoag LLP
> Seaport West
> 155 Seaport Boulevard
> Boston, MA 02210-2600
> 617 832 1000
> jbucking@foleyhoag.com
> alanderson@foleyhoag.cm
> mrodriguez@foleyhoag.com

Dated:  October 19, 2022

## CERTIFICATE OF SERVICE

I certify that on October 19, 2022, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

> /s/ *Allison L. Anderson*
> Allison L. Anderson